# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JOHN HAHN, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-568 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CLIENT SERVICES, INC. and CHASE BANK USA, N.A., | **Jury Trial Demanded** |
| Defendants. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed collection efforts into the District.

## PARTIES

3. Plaintiff John Hahn is an individual who resides in the Eastern District of Wisconsin (Waukesha County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendants sought to collect was incurred as a result of a consumer transaction.

6. Defendant Client Services, Inc. ("CSI") is a foreign corporation with its principal offices located at 3451 Harry S. Truman Boulevard, Saint Charles, MO 63301.

7. CSI does substantial business in Wisconsin and has a registered agent for service of process in Wisconsin located at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

8. CSI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. CSI is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10. CSI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

11. Defendant Chase Bank USA, N.A., ("Chase") is a national bank with its primary place of business located at 200 White Clay Center Drive, Newark, Delaware 19711.

12. Chase is one of the "Big Four" consumer banks in the United States. As of 2018, Chase had total assets in the amount of approximately $2.6 trillion. *See* J.P. Morgan Chase & Co. "Financial Highlights," December 31, 2018 (accessed: June 27, 2019) (available online at: https://www.jpmorganchase.com/corporate/investor-relations/document/financial-highlights-2018.pdf.)

13. Chase does substantial business in Wisconsin.

14. Chase issues and services Chase and other merchant or store-branded credit cards around the world, including in Wisconsin.

15. Chase is a debt collector under Wisconsin law.

16. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

17. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

18. Chase is a "debt collector" under Wisconsin law, in that it collects consumer debts owed to itself, both directly and indirectly through collection agencies.

19. Chase is a "merchant" as defined in the WCA, as the alleged debt arose from use of Plaintiff's consumer credit account. Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.")

20. The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

21. The Wisconsin Department of Financial Institutions has likewise designated merchants and creditors as "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt

collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

22. Chase uses third-party debt collection agencies, including CSI, to collect consumer debts. Chase, directly or indirectly, is a "debt collector" under this arrangement. Wis. Stat. § 427.103(3).

23. A company meeting the definition of a "debt collector" (here, Chase) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

## FACTS

24. On or about May 15, 2019, Chase mailed an account statement to Plaintiff regarding an alleged debt associated with a credit card with an account number ending in 9583. A copy of this account statement is attached to this complaint as Exhibit A.

25. Upon information and belief, the alleged debt referenced by Exhibit A was incurred by use of a credit card, which was used exclusively for personal, family, and household purposes.

26. Upon information and belief, Exhibit A is a form account statement, generated by computer, and with the information specific to Plaintiff inserted by computer.

27. Exhibit A includes the following representations:

| The Past Due amount of $880.00 is included in your Minimum Payment. | Payment Due Date: | 06/12/19 |
| | New Balance: | $5,061.92 |
| | Minimum Payment: | $1,056.00 |
| | Account number: | 9583 |

4

28. <u>Exhibit A</u> additionally includes the following representations:

> New Balance
> $5,061.92
> Minimum Payment Due
> $1,056.00
> Payment Due Date
> 06/12/19

29. <u>Exhibit A</u> states that, as of May 15, 2019, Plaintiff's alleged debt had a "New Balance" of $5,061.92, with a "Payment Due Date" of June 12, 2019, and a "Minimum Payment Due" of $1,056.00.

30. Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debt referenced in <u>Exhibit A</u> provided for *optional* acceleration upon the consumer's default. *See, e.g.*, https://files.consumerfinance.gov/a/assets/credit-card-agreements/pdf/Chase_Bank_USA/Slate_Visa_Agreement.pdf ("2018 Chase Slate Credit Card Agreement") ("If your account is in default, we **may** close it without notice and require you to pay your unpaid balance immediately.") (emphasis added).

31. <u>Exhibit A</u> also contains an "ACCOUNT MESSAGE" that the "account is closed and no longer available for use."

32. <u>Exhibit A</u> states that the creditor has closed the account but does not state that the consumer must pay the unpaid balance immediately. Instead, <u>Exhibit A</u> states that the consumer can avoid acceleration and return the account to a current status by tendering the minimum payment amount on or before June 12, 2019, the payment due date.

33. <u>Exhibit A</u> states that Chase would not exercise its rights under the optional acceleration clause until, at the earliest, June 12, 2019.

34. On or about May 20, 2019, CSI mailed Plaintiff a debt collection letter regarding the same alleged debt owed to Chase and associated with an account number ending in 9583. A copy of this letter is attached to this complaint as Exhibit B.

35. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

36. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by Defendant to attempt to collect alleged debts.

37. Upon information and belief, Exhibit B was the first written communication that Defendant sent to Plaintiff with respect to this alleged debt.

38. Exhibit B includes the following representations which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send debtors along, or within five days of, the initial communication:

> Unless you notify our office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

39. Exhibit B additionally includes the following representations:

> CURRENT CREDITOR: JP MORGAN CHASE BANK, N.A.
> ACCOUNT NUMBER: XXXXXXXXXXXX9583
> BALANCE DUE: $5,061.92
> REFERENCE NUMBER: ▇▇0193

40. Finally, Exhibit B also includes the following representations:

> Our client, JP MORGAN CHASE BANK, N.A., has placed the above account with our organization for collections.

41. Exhibit B, mailed on May 20, 2019, over three weeks before the "Payment Due Date" stated on Exhibit A, states the "BALANCE DUE" but does not state that Plaintiff could bring account current by making a minimum payment.

6

42. Exhibit B describes the full balance of $5,061.92 as "due" and states that it has been placed with CSI for "collections" but makes no reference to the actual minimum payment that Plaintiff could pay to bring the account current.

43. An unsophisticated consumer, upon receiving Exhibit B, would understand that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

44. The representation in Exhibit B that Plaintiff's account ending in 9583 had been accelerated is false, deceptive, misleading, and unconscionable and is a misrepresentation of the legal status of the debt. 15 U.S.C. § 1692e(2)(a); *see also* FTC Staff Commentary, 53 Fed. Reg. 50097, 50106 ("A debt collector may not ... falsely assert that the debt has matured or that it is immediately due and payable, when it is not.").

45. According to Exhibit A, as of August 4, 2018, when Exhibit B was mailed, Plaintiff's account had a "New Balance" of $7,588.91, with a "Payment Due Date" of August 13, 2018, and a "Minimum Payment Due" of 1,860.00.

46. By mailing the July 16, 2018 account statement, Chase waived its right to accelerate the maturity of the account before August 13, 2018, and when Exhibit B was mailed on August 4, 2018, Chase had not exercised the optional acceleration clause, notwithstanding whether Chase had closed or charged off the account for accounting purposes. *See, e.g., Johnson v. LVNV Funding*, No. 13-cv-1191, 2016 U.S. Dist. LEXIS 19651, at *15 (E.D. Wis. Feb. 18, 2016) ("That WaMu chose to write off the debt does not mean that it could improperly accelerate it."); *see also, Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160-61 (Ind. Ct. App. 2010) (in the context of credit card accounts, "a 'charge off' appears to be an accounting device that has no bearing upon the question of whether an optional acceleration clause has been invoked.").

7

47. An unsophisticated consumer would not know whether the debt had been accelerated or not, or how much debt is actually *due* as of the date of Exhibit B. Exhibit B states that the "ACCOUNT BALANCE" is $7,588.91 without stating an amount "due," while Exhibit A seeks only a minimum payment of $1,860.00. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector misleads consumer by stating a "current balance" without disclosing that a portion of that balance "might not yet be due, let alone overdue.").

48. Defendants represented the amount of the debt in a way that was confusing to the unsophisticated consumer and/or misrepresented the amount of the debt.

49. Plaintiff was misled and confused by Exhibits A & B.

50. An unsophisticated consumer would be misled and confused by Exhibits A & B.

### ***The FDCPA***

51. The FDCPA creates both substantive and procedural rights for consumers, and violations of those rights risk harm to concrete interests that the FDCPA protects. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false

representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

52. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15

U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

53. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information.")*; Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

54. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

55. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

56. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

57. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

58. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

59. 15 U.S.C. § 1692g(a) provides, in relevant part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

### *The WCA*

60. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

61. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

62. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

63. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

64. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

65. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

66. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

67. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

68. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer …. in such a manner as can reasonably be expected to threaten or harass the customer."

69. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

70. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

71. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. Count I is brought against Defendant CSI.

13

74. Exhibit B states the amount and legal status of the debt in a false, deceptive, misleading, and confusing manner.

75. Exhibit B attempts to collect portions of the debt which were not yet due without disclosing that these portions were not yet due.

76. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

78. Count II is brought against both Defendants.

79. Exhibit B states the amount and legal status of the debt in a false, deceptive, misleading, and confusing manner.

80. Exhibit B attempts to collect portions of the debt which were not yet due without disclosing that these portions were not yet due.

81. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

82. Plaintiff brings this action on behalf of a class consisting of:

(a) all natural persons in the United States of America, (b) who were sent a collection letter in the form of Exhibit B to the complaint, (c) for an alleged debt owed to Chase, (d) where the letter was mailed before the "Payment Due Date" stated in Chase's prior account statement, (e) the debt was incurred for personal, family, or household purposes, (f) where the letter was mailed between April 7, 2019 and April 7, 2020, inclusive, and (e) not returned by the postal service.

14

83. Plaintiff also brings this action on behalf of a subclass of Wisconsin residents consisting of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form of <u>Exhibit B</u> to the complaint, (c) for an alleged debt owed to Chase, (d) where the letter was mailed before the "Payment Due Date" stated in Chase's prior account statement, (e) the debt was incurred for personal, family, or household purposes, (f) where the letter was mailed between April 7, 2019 and April 7, 2020, inclusive, and (e) not returned by the postal service.

84. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

85. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A & B</u> violate the FDCPA or the WCA.

86. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

87. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

88. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

89. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: April 7, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com